**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| AMERICAN HEALTH CONNECTION,<br><br>               Plaintiff,<br><br>v.<br><br>CENTRAL MAINE HEALTHCARE CORP.,<br><br>               Defendant. | Case No. 2:24-cv-00298-NT |

**DEFENDANT CENTRAL MAINE HEALTHCARE CORP.'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff American Health Connection's ("AHC") Memorandum in Opposition to Defendant's Motion to Dismiss fails to address the fundamental flaws in its Amended Complaint—there can be no breach of a contractual term that does not exist, nor can there be recovery for services that were never rendered.

**I.     CMHC Is Not Obligated to Pay for Services AHC Did Not Provide**

AHC's arguments in opposition to CMHC's motion contradict each other. On one hand, AHC claims that Defendant Central Maine Healthcare Corporation ("CMHC") violated the Services Agreement between the parties by reducing the call volume to zero such that AHC did not provide CMHC any services. And on the other hand, it argues that CMHC failed to pay for services that it received and accepted. Neither a common sense reading of the Agreement nor principles of contract law allow for such a contradiction. Where CMHC reduced the call volume to zero (Am. Compl. ¶ 18), AHC necessarily did not provide any services to CHMC. *See* Am. Compl., Exhibit A (hereinafter "Agreement"). The Agreement obligated CMHC to pay only for "services and products ***provided by AHC***." *Id.* at § 1 (emphasis added). It did not obligate CMHC to pay for services and products that AHC did not provide. *Id.* The Agreement defines

- 1 -

the "Services" for which CMHC was required as those enumerated in Exhibit A to the Agreement—namely, live call center services and automated reminder calls. *Id.* at § 1. The Agreement does not entitle AHC to a minimum sum if the call volume fell below a certain threshold. Had the parties intended for a minimum services fee to apply, they would have included such a provision in Exhibit A to the Agreement. They did not.

The Agreement authorized AHC to invoice CMHC for services it did not provide in only two circumstances. *First*, if CMHC did not provide timely notice of a reduction in volume at 15 percent or more, AHC could bill CMHC "at the pre-reduced work flow rate until timely notice by [CMHC] is provided to AHC." *Id.* at § 12. This provision was inapplicable because CMHC provided timely notice of its reduction in call volume. Am. Comp. at ¶ 18. *Second*, the Agreement authorized AHC to invoice CMHC based on a prior month's call volume when the anticipated call volume was unknown. *See* Agreement at p. 14 ("AHC reserves the right to invoice CLIENT for the coming month's estimated Service fees based upon anticipated volumes as described in this Agreement and *if not known,* the prior month's volumes") (emphasis added). In such a case, AHC was obligated to "reconcile the fees charged against the Services actually provided." *Id.* AHC admits that it knew that the call volume assigned to it by CMHC would be zero (Am. Compl. at ¶ 18), yet it invoiced for services it did not provide using a method that was inapplicable. The Agreement did not permit it to do so.

AHC attempts to circumvent this fact by claiming that CMHC did not dispute its bills. *See* Opp. at 1-2. However, the dispute provision applies only to AHC's bills for Services rendered. Agreement at § 3 ("AHC shall bill CLIENT semi-monthly *for the Services*") (emphasis supplied). It requires CMHC to pay invoices for *services* rendered within 45 days. *Id.* The Agreement does not state, however, that AHC could bill for services that it has not or does

not anticipate providing nor does it require CMHC to pay invoices for anything other than services rendered. *Id.; see also Wortley v. Camplin*, No. 01-122-P-H, 2001 WL 1568368, at * 7 (D. Me. Dec. 10, 2001) (noting that "[u]nder Maine law, where a contract provides for concurrent duties of performance by both parties, performance by one party of his duties is a prerequisite for a demand for performance by the other party."). Thus, as a matter of law, AHC cannot maintain its breach of contract claim on the basis that CMHC did not dispute its invoices because the Agreement did not require CMHC to do so.

## II.     The Agreement Did Not Entitle AHC to a Minimum Call Volume

"A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Handy Boat Service, Inc. v. Prof'l Servs., Inc.*, 711 A.2d 1306, 1308 (Me. 1998) (citing *Bumila v. Keiser Homes of Maine, Inc.*, 696 A.2d 1091, 1094 (Me. 1997)). The interpretation of an unambiguous contract is a question of law. *Id.*

Here, the Agreement unambiguously permitted CMHC to unilaterally determine the call volume to be referred to AHC, so long as it provided AHC appropriate notice so AHC could adjust its operations appropriately. The Amended Complaint does not claim that CMHC provided inadequate notice, nor could it. AHC fails to identify a provision that entitled it a minimum monthly call volume because none exists. Rather, it unambiguously provided that CMHC had sole control over call volume. For example, Section 4 provided that CMHC would "advise AHC of any changes to the standing orders or permanent instructions such as changes in workflow, phone numbers . . . at least forty-eight (48) hours prior to the time the change is to become effective." Agreement at § 4. Similarly, section 12 required CMHC to provide notice when there would be a change in the workflow that would affect the call volume by 15% or more. *Id.* at § 12. These provisions permitted AHC to "increase or decrease its staff allocated to

[CMHC's] account." *Id.* They do not, however, provide that CMHC guaranteed AHC a minimum call volume per month. AHC cannot read into the Agreement a term that simply does not exist and then claim that CMHC has breached that non-existent term. *See Arsenault v. One Call Logistics, LLC*, No. 2:24-cv-00022-JAW, 2024 WL 4134845 at *3, 10 (D. Me. September 10, 2024) (dismissing breach of contract claim because there was no provision in the contract that obligated the defendant to provide certain services to the plaintiff).

AHC's reliance on *Top of the Track Assocs. v. Lewiston Raceways, Inc.*, 654 A.2d 1293 (Me. 1995), to claim that the Agreement impliedly obligated CMHC to provide a minimum call volume per month is misplaced. *Top of the Track Assocs.* involved a commitment to continue to operate a racetrack, upon which the plaintiff restaurant was wholly dependent. Those unique circumstances do not exist here. *See Haines v. Great N. Paper, Inc.*, 808 A.2d 1246 (Me. 2002) (noting that the Court inferred "a covenant regarding continued operation on the very unique facts of that case [*Top of the Track Assocs.*], involving one business whose success was wholly dependent upon the operation of the other and where the dependent business had significantly changed position and been encouraged to spend funds in responsible anticipation of continued operation of the race track"). AHC does not allege that its operations and existence were wholly dependent on CMHC's assignment of calls. Instead, the Agreement specifically contemplates that AHC would adjust its operations based on CMHC's instructions. There is no breach.

## CONCLUSION

For the aforementioned reasons, Defendant Central Maine Healthcare Corporation's Motion to Dismiss should be allowed.

November 15, 2024

Respectfully submitted,

CENTRAL MAINE HEALTHCARE CORP.

By its attorneys,

*/s/ Seth B. Orkand*
Kathleen G. Healy
Seth B. Orkand (*pro hac vice*)
One Boston Place, 25th Floor
Boston, MA 02108
Tel. No. (617) 557-5915
Fax No. (617) 557-5999
sorkand@rc.com
khealy@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on November 15, 2024.

*/s/ Seth B. Orkand*
Seth B. Orkand