UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| AMERICAN HEALTH CONNECTION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:24-cv-00298-SDN |
| | ) | |
| CENTRAL MAINE HEALTHCARE CORPORATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

Defendant Central Maine Healthcare Corporation ("CMHC") moves to dismiss (ECF No. 13) Plaintiff American Health Connection's ("AHC") Amended Complaint (ECF No. 12). By way of its Amended Complaint, AHC brings one claim for relief against CMHC, alleging CMHC breached its contract with AHC for call-center services by reducing its call volume referred to AHC to zero, effectively terminating the contract (ECF No. 12 at 3). CMHC moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing AHC failed to plead a material breach of the contract (ECF No. 13). For the reasons discussed below, CMHC's motion to dismiss is DENIED.

**I.   Factual Background**

The following facts are drawn from AHC's Amended Complaint (ECF No. 12) and are treated as true for purposes of resolving CMHC's motion to dismiss.

AHC provides call center services to clients in the healthcare industry. Am. Compl. ¶ 1. AHC and CMHC entered into a contract dated April 1, 2020, for AHC to provide CHMC with call center services for a specified term. Am. Compl. ¶ 9. The contract commenced June 1, 2020, Am. Compl. ¶ 10, and its initial term was to last three years,

1

through May 31, 2023. Am. Compl. ¶ 11. The contract automatically renewed unless either party provided written notice to the other of its intention not to renew the contact at least ninety days before the end of the term. Am. Compl. ¶ 12. Because neither party did so after the initial three-year term, the contract automatically renewed for one year, from June 1, 2023, through May 31, 2024. Am. Compl. ¶ 13.

On December 1, 2023, CMHC provided AHC with written notice of its intention not to renew the contract term, which would have automatically renewed at the conclusion of the first renewal term on May 31, 2024. Am. Compl. ¶¶ 14-15. CMHC's notice misstated the end of the contract term as March 31, 2024, instead of May 31, 2024. Am. Compl. ¶ 18. The contract allowed for early termination on specific conditions constituting cause. Am. Compl. ¶ 16. CMHC had no cause for early termination and never claimed any cause. Am. Compl. ¶ 17. When CHMC was informed that it had misstated the end of the date of the contract term, it reduced its call volumes to AHC's call center to zero. Am. Compl. ¶ 19. AHC sent invoices to CMHC for its contract charges through May 31, 2024, which CMHC has neither disputed nor paid. Am. Compl. ¶¶ 20-22.

Under the contract, CMHC, as the client, "agree[d] to pay for the services and products provided by AHC under th[e] Agreement."[1] Am. Compl. Ex. A (ECF No 12-1) at 1, ¶ 1. The contract further provided: "AHC shall bill [CMHC] semi-monthly for the

---

[1] Generally, courts may not consider material beyond the complaint on a motion to dismiss without converting the motion into one for summary judgment. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). However, there is a "narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). Here, the contract is central to AHC's claim, both parties refer to the contract in support of their arguments, and neither party has disputed the contract's authenticity. The Court will treat the contract, Exhibit A to the Amended Complaint (ECF No. 12-1), as merged with the pleadings.

Services. [CMHC] shall pay AHC the amount of each invoice (not disputed in good faith) within forty-five (45) days after the date of the invoice." Ex. A at 1, ¶ 3.

Paragraph twelve of the contract required CMHC to provide AHC with a "minimum of thirty (30) days['] notice . . . prior to a change in call volume which is unexpected by [AHC] . . . of at least fifteen percent (15%)."[2] The contract also provided the circumstances and procedure under which either party could terminate the contract for cause, including the following provision: "[E]ither party may terminate this Agreement effective upon written notice, if (i) the other party materially breaches any non-monetary obligation under this Agreement and fails to cure such breach within thirty (30) days following written notice thereof to the breaching party which specifies in reasonable detail the nature of the breach . . . ." Ex. A at 6, ¶ 13.

## II. Legal Standard

CMHC moves to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court applies a two-step inquiry to resolve such motions: First, "isolate and ignore statements in the complaint that simply offer legal labels and conclusions." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Second, "take the complaint's well-pled (i.e., non-conclusory, non-

---

[2] The entirety of paragraph twelve reads as follows:
>If AHC provides overflow coverage for [CMHC], [CMHC] shall provide a minimum of thirty (30) days['] notice to AHC prior to a change in call volume which is unexpected by AHC (other than seasonal variations and similar factors in normal operations) of at least fifteen percent (15%). [CMHC] shall assure that AHC has sufficient time to increase or decrease its staff allocated to the [CMHC] account. AHC and [CMHC] may mutually agree in writing to a shorter notice, if AHC determines that it can affect the change on less notice. [CMHC]'s failure to provide notice of an at least fifteen percent (15%) decrease in call volume shall result in [CMHC] being billed at the pre-reduced work flow rate until timely notice by [CMHC] is provided to AHC.

Ex. A at 6, ¶ 12.

speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.*

### III.  Discussion

CMHC argues it did not materially breach the contract because the contract unambiguously did not guarantee AHC a minimum call volume; therefore CMHC had the right to reduce the call volume to zero after giving thirty-days' notice without running afoul of the contract terms. ECF No. 14 at 3-4. AHC argues CMHC's interpretation of the contract is flawed as such an interpretation would render meaningless the provisions of the contract providing for termination for cause and nonrenewal of the contract term. ECF No. 15 at 6. According to AHC, because CMHC's interpretation is not the only plausible reading of the contract, the motion to dismiss must be denied. ECF No. 15 at 4.

By its terms, Maine law governs the contract. Ex. A at 10, ¶ 24. The elements of a claim for breach of contract are: (1) the existence of a contract; (2) a breach of a material term of the contract; and (3) damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 10-11, 89 A.3d 1088. The arguments here are centered around the "material breach" element. To evaluate whether AHC has pleaded a material breach, the Court first looks to the contract language to determine its terms.

Determining whether a contract is ambiguous, and if it is unambiguous, its interpretation, are questions of law. *Alrig USA Acquisitions LLC v. MBD Realty LLC*, 2025 ME 11, ¶ 12, 331 A.3d 372. When interpreting any portion of the contract, the Court must consider the contract as a whole, reading "[a]ll parts and clauses . . . together [so] that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quoting *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 385 (Me. 1989)). "The interpretation of an

unambiguous contract 'must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence.'" *Id.* (quoting *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)). "Ultimately, [the Court] seek[s] to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless." *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244.

Contract language is ambiguous if it is "reasonably susceptible to different interpretations." *Acadia Ins. Co. v. Buck Const. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515. If the language of the contract is ambiguous, "the interpretation of the ambiguous language becomes a question for the fact finder to resolve by taking extrinsic evidence." *Dow*, 2020 ME 10, ¶ 14, 224 A.3d at 249.

CMHC argues the contract unambiguously gave it the right to reduce its call volume to AHC to zero because the contract did not establish a minimum call volume. ECF No. 14 at 4. Further, it argues the language requiring notification of a change in call volume of "at least fifteen percent" provided only a minimum change threshold for notification and permitted a total reduction to zero after the required notification. Therefore, according to CMHC, its alleged actions could not have breached the contract. ECF No. 14 at 3-4; *see* Ex. A at 6, ¶ 12. If the contract unambiguously says what CMHC argues it does, then AHC's allegations do not constitute a breach. If, however, the contract is "reasonably susceptible to different interpretations," the language is at least ambiguous, and CMHC's motion to dismiss must be denied. *See Acadia Ins. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515.

Upon examination of the contract as a whole, the Court finds the contract is at least ambiguous as to whether CMHC's actions constituted a material breach. Along with

5

paragraph twelve's notification requirement for any call volume change of "at least fifteen percent," Ex. A at 6, ¶ 12—arguably indicating the parties anticipated the potential for some form of call volume change—the contract also contains provisions outlining the length of the contract term and procedures for terminating the contract for cause, *see* Ex. A at 1, ¶ 2; *id.* at 6-7, ¶ 13. Paragraph two establishes an initial contract term of three years, with automatic one-year term renewals unless one party gave sufficient notification to the other party of its intention not to renew. Ex. A at 1, ¶ 2. Paragraph thirteen outlines the procedures for early termination of the contract for cause following a notice and cure period for non-monetary material breaches. Ex. A at 6, ¶ 13.

The presence of these other provisions makes the contract at least reasonably susceptible to another interpretation. A fact finder could conclude that the contract provisions providing for a three-year initial term with automatic one-year term renewals, and the provisions allowing CMHC a procedure for termination for cause after a thirty-day notice and cure period, would be superfluous if CMHC could avoid its contract obligations so long as it provided at least thirty days' notice before it reduced its call volume to zero. As one of the principles of contract interpretation is to "give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless," *Dow*, 2020 ME 10 ¶ 14, 224 A.3d 244, a fact finder could plausibly interpret the contract differently than CMHC argues. Further, paragraph twelve speaks in terms of call volume reduction, not total elimination, which also supports another interpretation. *See* Ex. A at 6, ¶ 12 ("[CMHC]'s failure to provide timely notice of an at least fifteen percent (15%) *decrease* in call volume shall result in [CMHC] being billed at the pre-*reduced* work flow rate . . . ." (emphasis added)).

The contract is reasonably susceptible to an interpretation that differs from the one argued by CMHC, therefore it is at least ambiguous and AHC has pleaded enough facts to allege a breach under a plausible reading of the contract. For this reason, CMHC's motion to dismiss for failure to state a claim is DENIED.

## IV.   Conclusion

For the reasons discussed above, CMHC's motion to dismiss (ECF No. 13) is DENIED.

**SO ORDERED.**

Dated this 2nd day of June, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
